IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HUMANISTAS SECULARES DE PUERTO RICO, INC.; DOE 1, DOE 2, DOE 3<br><br>**PLAINTIFFS**<br><br>v.<br><br>Eligio Hernandez Perez, in his official capacity as Secretary of Education and Luz Ramos, in her official and individual capacities<br><br>**DEFENDANTS** | CIVIL NO. |

## COMPLAINT

TO THE HONORABLE COURT:

COME NOW Plaintiffs through the undersigned attorneys, who allege, expose, and request relief as follows:

### *Introduction*

1. As far back as 1962, the Supreme Court of the United States has held that "the constitutional prohibition against laws respecting an establishment of religion must at least mean that in this country it is no part of the business of government to compose official prayers for any group of the American people to recite as a part of a religious program carried on by government." *Engel v. Vitale*, 370 U.S. 421, 425 (1962).

2. The Luis M. Santiago School (hereafter LMS or LMS School) is a primary school in the Puerto Rico Municipality of Toa Baja and is part of the public school system in Puerto Rico. Since September 2019, in direct contradiction to well-established constitutional law, LMS School

1

officials have organized, led, and coerced students to participate in fifty-minute prayer sessions on school property, during the school day, every other Monday.

### *Nature of the Claims*

3. Plaintiffs bring this action under 42 U.S.C. § 1983 seeking an injunction prohibiting the Defendants from continuing to organize school prayer sessions, lead prayer sessions, or direct students to engage in prayer, as well as a declaration that Defendants' conduct violates the Establishment Clause of the First Amendment and the free exercise rights of the individual Plaintiffs.

### *Jurisdiction and Venue*

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5. The Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has authority to provide injunctive relief under 28 U.S.C. § 1343.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b), as the Plaintiffs and the Defendants all reside or are situated within this district.

### *The Parties*

*Plaintiffs:*

#### *Doe 1*

7. Doe 1 is of legal age and a resident of Toa Baja, Puerto Rico. Doe 1 is the mother of Doe 2 and Doe 3, who are minors who attend Luis M. Santiago School.

8. Doe 1 identifies as a Secular Humanist and is a member of Humanistas Seculares de Puerto Rico, Inc.

9. Doe 1 has decided to raise her children as Secular Humanists, without the belief in any god. As a Secular Humanist, Doe 1 does not engage in prayer or believe in the power of prayer.

She does not let her children participate in religious activity because she does not want to force any religious ideology on them, allowing them to choose for themselves once they are old enough to decide. Thus, exposing her children to prayer or coercing her children to engage in prayer violates her sincerely held beliefs.

### *Doe 2*

10. Doe 2 is the minor child of Doe 1 who is being raised as a Secular Humanist and is enrolled in the second grade at Luis M. Santiago School.

11. Doe 2 loves school and is an excellent student who has received mostly As for grades.

### *Doe 3*

12. Doe 3 is the minor child of Doe 1 who is being raised as a Secular Humanist and is enrolled in the eighth grade at Luis M. Santiago School.

13. Doe 3 is a straight-A student, eligible for honors, who has received an award for excellent conduct in the classroom.

14. All three Doe Plaintiffs bring this action under pseudonyms to protect themselves, and in the case of Doe 1, her minor children, from social ostracism, retaliation, and even physical harm. In their Motion for Leave to Proceed Using Pseudonyms and for Protective Order, filed contemporaneously with this Complaint, Plaintiffs ask the Court to allow the individual Plaintiffs to proceed pseudonymously for the remainder of this case, for the reasons set forth therein.

### *Humanistas Seculares de Puerto Rico, Inc.*

15. Humanistas Seculares de Puerto Rico, Inc. (hereafter Puerto Rico Humanist or HUSE), is a non-profit organization organized under the laws of the Commonwealth of Puerto Rico, registered in the Puerto Rico Department of State under registration number: 302256. HUSE has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

16. HUSE is an organization dedicated to further and promote the humanist worldview, which groups atheist, agnostics and non-believers under the principles of reason, freethought and science.

17. HUSE is also dedicated to defending the Separation between Church and State, monitoring religious violations to the Establishment Clause of the First Amendment, and protecting the rights of conscience and free exercise rights of its members.

*Defendants:*

### *Secretary of Department of Education: Hon. Eligio Hernandez Perez*

18. Dr. Eligio Hernandez Perez is sued solely in his official capacity as the Secretary of the Department of Education (DOE), in which capacity he directs the everyday business of the agency, and is the state official with the highest-ranking authority in the DOE.

19. Dr. Eligio Hernandez Perez, acting under color of state law, directs the state policies of the DOE as they are to be applied to all public schools in the Commonwealth of Puerto Rico, which includes LMS School of the Municipality of Toa Baja.

20. Pursuant to Law No. 104 of 29th of June of 1955, the Attorney General of the Commonwealth of Puerto Rico is to be notified of all judicial actions pursued against the Commonwealth, and is hereby served in the present action.

21. The Commonwealth of Puerto Rico's physical address is that of its Department of Justice, located in Olimpo Street, Axtmayer Corner, Stop 11, San Juan, Puerto Rico, and its postal address is P.O. Box 9020192, San Juan, Puerto Rico 00902-0192.

### *Principal Luz Ramos*

22. Defendant Luz Ramos is the principal of LMS School and is sued in both her official capacity and individual capacity. She serves as the administrative head of the school. Her primary duty is the creation and implementation of LMS's policies and programs, consistent with the rules

4

and regulations promulgated by the DOE, the laws and Constitution of the Commonwealth of Puerto Rico, and the laws and Constitution of the United States of America. She also developed and implemented the school prayer practice at issue in this case.

*General Allegations*

23. Luis M. Santiago School is a public school in the Puerto Rico Municipality of Toa Baja which is under the authority of the DOE.

24. On September 3, 2019, while dropping off her children at LMS, Doe 1 observed School staff collecting all students in the school's front yard in order to participate in a Christian prayer, led by school staff.

25. The first part of the prayer was conveyed by a school teacher, Mr. Julio Otero, with use of a microphone and speakers making the prayer audible to all students as well as those adjacent to the school's front gate.

26. Upon observing this prayer, Doe 1 immediately confronted the first available school official, Mrs. Cindy Prieto, a health class teacher who was also taking part in the delivery of the prayer, to protest the prayer and to request that her children be exempted from participating.

27. Mrs. Prieto informed Doe 1 that participation in the school-led prayer was mandatory for all students, that the prayers would be taking place regularly in the future, and that Doe 2 and Doe 3 would not be exempted from participation.

28. Mrs. Prieto then took the microphone and continued to deliver the second part of the prayer held that morning.

29. Doe 1 subsequently requested an urgent meeting with the school principal, Mrs. Luz Ramos, to discuss the prayer practice she had just witnessed and to request an exemption from participating for her children.

30. Mrs. Ramos never met, at any moment to this date, with Doe 1 to address Doe 1's objections to the school-led prayers.

31. Undeterred, Doe 1 next discussed the school prayer incident with Doe 2's homeroom teacher, Mrs. Vera, and the School Social Worker, Mrs. María Santana, who suggested that Doe 1 could request that her children be exempted from participation in future prayers.

32. However, subsequent to the meeting during which Mrs. Santana indicated that Doe 2 and Doe 3 could be exempted from participation in the school prayers, Mrs. Prieto, the School health teacher, informed Doe 1 that if her children did not participate in the prayers, marks would be made in their student records indicating that they had cut class.

33. On Monday September 23, 2019, at approximately 9:00 a.m., LMS School staff again organized a school-led prayer in the front yard of the school. Once again, LMS staff directed all students to participate while School staff led the prayers over a microphone, for approximately fifty minutes.

34. Since September 2019, staff-led prayers have taken place regularly at Luis M. Santiago School on alternating Mondays, starting at approximately 9:00 a.m. and lasting for approximately fifty minutes, though the length of each prayer event varies unpredictably.

35. Principal Ramos developed and implements the school prayer practice, which School employees carry out pursuant to her instructions. Principal Ramos has directly participated in the school prayer practice, including by joining students in Christian prayer during the September 3, 2019 event observed by Doe 1.

36. Every prayer delivered during these school prayer sessions has been a Christian prayer.

37. The school prayer practice described above has had a detrimental impact on Doe 1 and her children.

38. In an effort to avoid these prayers, Doe 1 has held her children out of school on alternating Mondays from 9:00 a.m. until 10:00 a.m., when she expects the school prayers to be taking place.

39. Teachers for both Doe 2 and Doe 3 have threatened to punish the children for unexcused absences or for being tardy as a result of Doe 1's efforts to avoid the school-led prayers.

40. Because students receive a grade for their attendance, receiving tardy marks can result in lowering a student's overall grade point average (GPA).

41. The Doe family are all very proud of Doe 2 and Doe 3's exemplary grades and other academic achievements. Having their GPAs lowered due to these absences is viewed by Doe 1 and both children as a significant punishment and has caused the family considerable anxiety.

42. Additionally, because the length of the school prayers is variable and unpredictable, on one prayer day in September, as a result of holding Doe 3 out of school to avoid the prayers, Doe 3 was late to class for a health class exam. Doe 3's teacher refused Doe 1's request to allow Doe 3 to take a make-up exam.

43. The health class teacher who refused to allow a make-up exam for Doe 3 was Mrs. Prieto.

44. Due to conflict between Mrs. Prieto and the Doe family regarding the school prayers, the Doe family's identity as Secular Humanists, and her refusal to allow Doe 3 to take a make-up exam, Doe 1 requested that Doe 3 be moved to a different class. Doe 3 was subsequently moved from her health class elective to another class.

45. The school-led prayers have placed additional strain on Doe 1 and her family because Doe 1 must hold her children out of school and supervise them on alternating Mondays. If she were not supervising her children at that time, Doe 1 would instead be taking care of her sick relative, who is both physically and mentally disabled and is in need of near-constant supervision.

46. Avoiding the school-led prayers is the sole reason Doe 1 has held her children out of school. If LMS ceased holding school-led prayers, Doe 1 would no longer hold her children out of school.

47. School officials have demonstrated a willingness to treat the Doe children differently due to the Doe family's beliefs as Secular Humanists.

48. Doe 2's teacher publicly outed the family as non-Christian to the father of one of Doe 2's classmates.

49. That father's son, who is Doe 2's classmate, told Doe 2 that, "If you believe in God, you go to Heaven, if you don't believe in God, like your mother, you will go to Hell."

50. As a result, Doe 2 has expressed fear that Doe 1 will suffer in Hell for not being a Christian.

51. On another occasion, in December 2019, an LMS teacher had Doe 2 sit out during a coloring activity because Doe 2 is non-Christian and the class was coloring figures from the Christian nativity scene.

52. Once again, Doe 2 was made to feel ostracized for the Doe family's beliefs as Secular Humanists.

53. LMS School staff have exhibited a willingness to incorporate Christian prayer into other school events as well. On October 25, 2019, for instance, LMS held a march through the streets of Toa Baja to raise awareness of breast cancer, organized and directed by school staff. During the activity, students marched behind a pick-up truck fitted with high-range speakers from which a school staff member recited a prayer.

54. Mrs. Ramos was again, also present and participated during the march on October 25th, during which a school staff member recited a prayer from a pick-up truck fitted with high-range speakers.

55. On November 9, 2019, HUSE sent a letter by certified mail to the Attorney General of the Department of Justice giving notice of the violations to Plaintiffs' constitutional rights which were taking place at Luis M. Santiago School; apprising the Commonwealth of Puerto Rico of legal action if no steps were taken to redress the impingement upon Plaintiffs' rights.

56. The school prayer practice has continued, unaltered, despite the letter from HUSE to the Department of Justice.

## Cause of Action

57. Paragraphs 1 through 56 above are incorporated as if fully set forth herein.

58. Defendants' practice of organizing school-led prayer, leading prayers during school events, and encouraging students to participate in prayer during the school day (collectively the "school prayer practice") violates the Establishment Clause and Free Exercise Clause of the U.S. Constitution's First Amendment, which apply with full force and effect to the official acts of the Commonwealth of Puerto Rico, including its agencies like the Puerto Rico Department of Education and its officers and employees, through the Due Process Clause of the U.S. Constitution's Fourteenth Amendment.

59. Defendants' school prayer practice violates longstanding United States Supreme Court precedent, including *Engel v. Vitale*, 370 U.S. 421 (1962).

60. Defendants' school prayer practice has no legitimate secular purpose and instead has the purpose of advancing religion in general and Christianity specifically.

61. Defendants' school prayer practice has the effect of advancing and endorsing Christianity over all other religions and religion in general over nonreligion.

62. Defendants' school prayer practice excessively entangles the government with religion and leads to religious divisiveness in the schools and community.

63. Defendants' school prayer practice coerces students, including Doe 2 and Doe 3, into participating in school-led Christian prayer, in violation of the Establishment Clause.

64. Defendants' school prayer practice forces students, including Doe 2 and Doe 3, to choose between participating in a school activity that violates their personal beliefs or risking ostracism and criticism by opting out. Putting school children to this choice violates their rights of conscience and free exercise rights under the Free Exercise Clause of the First Amendment.

65. Defendants' school prayer practice forces parents, including Doe 1, to choose between allowing their children to be subjected to a government-organized religious practice, in violation of their personal beliefs, or subjecting their children to the risk of ostracism and criticism by opting them out of the practice. Putting parents to this choice violates their rights of conscience and free exercise rights under the Free Exercise Clause of the First Amendment.

66. At all times, Defendants' actions in creating and executing this school prayer practice have been performed under color of law within the meaning of 42 U.S.C. § 1983.

67. If allowed to continue, Defendants' conduct will continue to irreparably harm Plaintiffs.

### *Request of Relief*

### *Injunction*

A. Plaintiffs request that this Court permanently enjoin Defendants from organizing prayer events during the school day, leading prayers during school events, or encouraging students to participate in prayer while at school.

### *Declaratory Judgement*

B. Plaintiffs requests a declaratory judgment that Defendants' actions of organizing prayer events during the school day, leading prayers during school events, and encouraging students to participate in prayer while at school are unconstitutional.

*Damages*

C. Plaintiffs seek nominal damages, in the amount of one dollar, solely against Ms. Luz Ramos in her personal capacity, for implementing a school-led prayer practice in direct violation of well-established constitutional law.

*Attorney Fees*

D. Plaintiffs also request an order awarding them the costs of this action, including attorneys' fees, costs, and expenses, under 42 U.S.C. § 1988.

*Other Relief*

E. Plaintiffs additionally request such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In Caguas, Puerto Rico this 27th of February 2020.

<u>s/Carlos A. Cintron Garcia, Esq.</u>
USDC-PR: 306413
HUMANISTAS SECULARES DE PUERTO RICO
PO BOX 7222
CAGUAS, PR  00726-7222
TEL: 787-325-6001
cintrongarcialaw@gmail.com

Samuel T. Grover (motion for admission *pro hac vice* pending)
Wisconsin State Bar No. 1096047
Madeline E. Ziegler (motion for admission *pro hac vice* pending)
Wisconsin State Bar No. 1097214
FREEDOM FROM RELIGION FOUNDATION, INC.
P. O. Box 750
Madison, WI 53701
608-256-8900
sgrover@ffrf.org / mziegler@ffrf.org

*Attorneys for Plaintiffs*

11

## Verification of Complaint
## Pursuant to 28 U.S.C. § 1746

I, Doe 1, verify, under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 25, 2020

*Doe 1*
Doe 1